YOUNG, J.
Defendants own land that was partially taken in condemnation proceedings initiated by plaintiff. At issue is whether the trial court properly allowed defendants to present, in support of their proffered calculation of just compensation, evidence that their *127 property had been rezoned from residential to commercial after the taking.
We conclude that the evidence of the posttaking rezoning was irrelevant to the issue of the condemned property’s fair market value at the time of the taking. Because the trial court abused its discretion in admitting this evidence, and because the error was not harmless, we affirm the judgment of the Court of Appeals, which reversed the jury’s verdict and remanded the case for further proceedings.
I. FACTS AND PROCEDURAL HISTORY
Defendant Haggerty Corridor Partners Limited Partnership owned approximately 335 acres of an undeveloped tract of land in Novi, Michigan, which it had assembled for the future purpose of building a high-tech office park. Plaintiff, the Michigan Department of Transportation (MDOT), sought to condemn approximately fifty-one acres of this property for construction of a portion of the M-5 Haggerty Road Connector in the city of Novi. As required under MCL 213.55,[1] MDOT provided defendants with a good-faith offer of $2,758,000 for the property, based on its then-applicable single-family and agricultural zoning classification.[2] Defendants, believing that the property’s “highest and best use”[3] was commercial rather than residential, *128 refused MDOT’s offer.
In December 1995, MDOT initiated an eminent domain proceeding under the Michigan Uniform Condemnation Procedures Act (UCPA)[4] to condemn the property. At trial, as might be expected, the parties presented widely divergent evidence with respect to just compensation.
Consistent with its theory that the highest and best use of the property was residential, MDOT presented evidence that, at the time of the taking, the property was not likely to be rezoned to permit the commercial use proposed by defendants.[5] MDOT’s appraiser testified that it was economically feasible to develop the parcel, both before and after the taking, as a residential subdivision, and that, in 1995, it was not reasonably possible that the land would be rezoned for commercial use. On the basis of an estimation that defendants’ land would support development of fifty-four residential lots, MDOT’s appraiser testified that the difference in the value of defendants’ property before and after the taking amounted to $1,415,000.
Defendants, on the other hand, sought to establish that they, along with other knowledgeable participants in the commercial real estate market, knew at the time of the December 1995 taking that the property was likely to be rezoned to allow for its planned use as an *129 office park.[6] Defendants’ appraiser testified that the land could not have been profitably developed as residential property, and that rezoning was imminent at the time of the taking. Against this backdrop, defendants’ appraiser arrived at a just compensation figure of $18.6 million.
Consistent with their theory that the fair market value of the residential property on the date of the taking was increased because of the realistic prospect that it would soon be rezoned commercial, defendants sought to introduce evidence of the fact that the property had, in fact, been later rezoned. Defendants wished to show that in May 1998, approximately two and one-half years after the taking occurred, defendants’ property was rezoned for office/ service/technology (OST) uses. MDOT filed a motion in limine to bar this evidence, arguing that it was irrelevant to the fair market value of the property as of the date of the taking. The trial court denied MDOT’s motion. Additionally, the trial court refused to grant MDOT’s alternative request to present evidence that the rezoning took place solely as a result of the taking.[7]
*130 At MDOT’s request, the jury was taken on a bus tour of defendants’ property. The parties vigorously dispute what the jurors saw on this tour. MDOT contends that the jurors saw mainly an undeveloped tract with some commercial buildings under construction on a portion of the property. Defendants contend, on the other hand, that the jurors saw many completed office buildings on the developed portion of the property and that only a small portion of the property remained undeveloped. There is no record to support either party’s contention.
The jury was instructed that fair market value must be assessed as of the date of the condemnation, and not as of some future date. The jury was further instructed, with respect to the zoning reclassification, that
if there was a reasonable possibility, absent the threat of this condemnation case, that the zoning classification would have been changed, you should consider this possibility in arriving at the value of the property on the date of the taking.
The jury determined that just compensation was owed to defendants in the amount of $14,877,000.
On appeal to the Court of Appeals, MDOT contended that the trial court erred in denying its motion to exclude evidence of the posttaking rezoning decision and in further prohibiting MDOT from introducing evidence establishing that the zoning change was caused by the condemnation itself. The Court of Appeals majority agreed that the trial court abused its discretion in allowing the jury to consider evidence of the posttaking zoning change and that the error was not harmless:
The subject property was to be valued “as though the acquisition had not been contemplated.” MCL 213.70(1). Plaintiff attempted to introduce evidence establishing that the subject property was rezoned because of the condem *131 nation. If so, the actual rezoning was irrelevant. Indeed, the value of condemned property should have been determined without regard to any enhancement or reduction of the value attributable to condemnation or the threat of condemnation. State Highway Comm v L & L Concession, 31 Mich App 222, 226-227; 187 NW2d 465 (1971). Defendants were not entitled to the enhanced value that resulted from the condemnation project, only the value of the property at the time of taking. In re Urban Renewal, Elmwood Park Project, 376 Mich 311, 318; 136 NW2d 896 (1965). Although the potential for rezoning on the date of taking was properly considered, evidence of the actual zoning change was irrelevant to the value of the property on the date of taking and should not have been disclosed to the jury. Moreover, we agree with plaintiffs contention that the evidence improperly contributed to the jury’s finding that the rezoning was reasonably possible. At the very least, the improperly admitted evidence tainted the jury’s resolution of the “reasonable possibility” question of fact. Therefore, we conclude that the trial court abused its discretion in admitting the evidence.
We reject defendants’ contention that the evidentiary error was harmless. Had the evidence not been admitted, it is unlikely that the jury would have been exposed to the evidence that defendants now claim renders the improperly admitted evidence harmless.[8] Consequently, we deem it appropriate to reverse and remand for further proceedings.[9] [Unpublished opinion per curiam of the Court of Appeals, issued July 22, 2003 (Docket Nos. 234099, 240227), slip op, p 3.]
*132 The dissenting judge opined that the evidence was properly admitted:
As the trial court concluded, evidence of the actual rezoning had the tendency to make the existence of the possibility of rezoning more probable than it would be without the evidence. MRE 401. More importantly, however, is the fact that there is no Michigan case on point regarding the admissibility of the subsequent fact of rezoning, and our Sister States’ case law provide [sic] divergent views. However, one respected source (also cited by the trial court) indicates that “[t]he fact that, subsequent to the taking, the zoning ordinance was actually amended to permit the previously proscribed use has been held to be weighty evidence of the existence (at the time of the taking) of the fact that there was a reasonable probability of an imminent change.” 4 Nichols, Eminent Domain (3d ed), § 12C.03[3]. Accordingly, it cannot be said that the decision to admit the evidence was an abuse of discretion when no prior case has so held, and there is respected authority that favors the ruling made by the trial court.
Moreover, even if the admission of the evidence was an abuse of discretion, it was harmless error in light of the jury instructions and other competent, admissible evidence that allowed the jury to properly conclude that rezoning was a reasonable possibility. Here, the jury was presented with sufficient evidence regarding whether there was a reasonable possibility that the subject property would be rezoned, independent of the evidence of the actual rezoning, a fact which the majority concedes. Further, the trial court properly instructed the jury on the principles of condemnation law set forth by the majority, and repeatedly stressed the principle that the jury must value the property as of the date of the condemnation, rather than at some future date .... [MURRAY, J., dissenting, slip op, pp 2-3 (citations omitted).]
The dissent further rejected MDOT’s alternative argument that the trial court erred in refusing to allow it to introduce evidence establishing that the rezoning *133 was directly attributable to the condemnation proceedings. Judge MURRAY noted that MCL 213.73, which allows enhancement in value of the remainder of a partially . condemned parcel to be considered in determining just compensation, was inapplicable and did not serve to permit MDOT to introduce this evidence because MDOT did not plead in its complaint that defendants’ property was enhanced because of the improvement.[10] Thus, Judge MURRAY opined, the majority’s decision “effectively ignores the fact that defendants’ evidence directly relates to the ‘reasonable possibility’ that rezoning of the property would be effectuated.” Id. at 4.
This Court granted defendants’ application for leave to appeal, limited to the issues “(1) whether a posttaking zoning decision can be considered in determining value at the time of the taking, and (2) whether the Court of Appeals decision in this case is consistent with Dep’t of Transportation v [VanElslander], 460 Mich 127 [594 NW2d 841] (1999).”[11] We would hold that the evidence of a posttaking rezoning is irrelevant to a just compensation determination, that the error in the admission of such evidence in this case was not harmless, and that our conclusion is wholly consistent with VanElslander, supra, and we affirm the judgment of the Court of Appeals majority.
II. STANDARD OF REVIEW
Evidentiary rulings are reviewed for an abuse of *134 discretion.[12] However, preliminary issues of law underlying an evidentiary ruling are reviewed de novo. See People v Lukity[13] (“[T]he admission of evidence frequently involve[s] preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. This Court reviews questions of law de novo.”). A trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law.[14]
III. ANALYSIS
A. INTRODUCTION
Const 1963, art 10, § 2 provides that “[p]rivate property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law.” The term “just compensation” as used in our Constitution, as well as in the UCPA, is a term of art that “imports with it all the understandings those sophisticated in the law give it.”[15] The concept of just compensation “ ‘includes all elements of value that inhere in the property,’ ”[16] and must be determined on the basis of all factors relevant to its cash or market value.[17]
As we have recently had occasion to reaffirm, fair market value is to be determined as of the date of the taking. See Silver Creek, supra (“ ‘[A]ny evidence that *135 would tend to affect the market value of the property as of the date of the condemnation’ ” is relevant in determining just compensation.).[18]
In keeping with these venerated principles concerning the calculation of just compensation, the UCPA specifically provides that fair market value “shall be determined with respect to the condition of the property and the state of the market on the date of valuation."[19] The UCPA prohibits, however, the consideration of any changes in market conditions that are substantially due to the general knowledge of the imminent condemnation of the property.[20] Instead, with the exception of enhancement in value of the remainder of a partially taken parcel,[21] “the *136 property shall be valued in all cases as though the acquisition had not been contemplated.”[22]
B. POSSIBILITY OF REZONING AS A FACTOR AFFECTING JUST COMPENSATION
A condemned parcel’s fair market value must be determined “ ‘ “based upon a consideration of all the relevant facts in a particular case.” ’ ”[23] Accordingly, evidence demonstrating the likelihood of a zoning modification, just like any number of circumstances that may affect a property’s value on the open market, may be relevant in determining just compensation. However, because just compensation must be calculated on the basis of the market value of a property on the date of the taking, the relevance of any such evidence is wholly dependent on whether, and how, the particular factor at issue would have affected market participants on that date.
*137 Our case law is quite clear in this regard. As we noted in State Hwy Comm’r v Eilender:[24]
We look at the value of the condemned land at the time of the taking, not as of some future date. If the land is then zoned so as to exclude more lucrative uses, such use is ordinarily immaterial in arriving at just compensation. But, on the other hand, it has been held, “if there is a reasonable possibility that the zoning classification will be changed, this possibility should be considered in arriving at the proper value. This element, too, must be considered in terms of the extent to which the ‘possibility’ would have affected the price which a willing buyer would have offered for the property just prior to the taking.” [Emphasis supplied.]
Thus, we concluded in Eilender that a nonfrivolous, nonspeculative “reasonable possibility” of a zoning change, as evidenced by an already pending zoning modification, could properly be considered in determining just compensation.[25]
Similarly, we held in VanElslander, supra, that the trial court abused its discretion in refusing to allow plaintiff MDOT to present into evidence an appraisal of the condemnees’ property that was based on the possibility that a zoning variance could be obtained to cure the violations created by the condemnation. Noting that “ ‘any evidence that would tend to affect the market value of the property as of the date of condemnation is relevant,’ ”[26] we held that the possibility of obtaining a variance, just like the possibility of a zoning modification, may be relevant to the just-compensation determination. We stressed, however, that such evidence was *138 only relevant to the extent that it aided the fact-finder in determining “ ‘ “the price which a willing buyer would have offered for the property just prior to the taking____” ’ ”[27]
Applying these longstanding principles as reaffirmed in Eilender, VanElslander, and Silver Creek, we would hold that the trial court here committed an error of law, and thus abused its discretion,[28] when it denied MDOT’s motion to exclude evidence of the posttaking zoning modification.
We of course agree with the Court of Appeals dissent, and with our dissenting colleagues,[29] that relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”[30] Where we believe the dissenters have gone astray is in misidentifying the “fact that is of consequence."
The dissenters frame this consequential fact as the existence of a “reasonable possibility” that the property would be rezoned. See post at 169. The possibility of a zoning modification must, indeed, be a “reasonable” one in order, as a matter of logic, for it to have any bearing on fair market value. However, this is only part of the equation. The “reasonable possibility” of a zoning change bears on the calculation of fair market value only to the extent that it could have affected the price that a theoretical willing buyer would have offered for *139 the property immediately prior to the taking.[31] Thus, the “fact that is of consequence” is the reasonable possibility of a zoning modification, as that possibility might have been perceived by a market participant on condemnation day.[32] ..
Any information that was available at the time of the taking may certainly be relevant in determining the price that a property might fetch on the day of the taking. For example, in this case, defendants were properly permitted to present evidence that' they had met with city officials regarding their plans for the area, and that these officials had expressed a willingness to make the required zoning changes; that the Novi Chamber of Commerce and other members of the business community supported the proposed zoning change; that Novi’s Economic Development Coordinator, Greg Capote, did not believe that the property was suitable for single-family development; that there was a dire need for zoning to accommodate high-tech office development; and that, at the time of the taking, Capote was already involved in the planning for an OST zoning classification to accommodate this type of development. All of this evidence pertains to information that might have affected the value of the property as of the date of *140 condemnation, December 7, 1995. Indeed, at the. time defendants acquired their Novi property, beginning in 1988, the property was more valuable in their eyes because of the looming possibility of a future zoning change.[33]
In contrast, a posttaking event or occurrence is utterly irrelevant to the calculation of just compensation. Market participants are, as a general rule, not omniscient, and would not be aware on the date of the taking that a posttaking event is absolutely certain to occur.[34] A posttaking occurrence cannot possibly affect the fair market value of property on the day of the condemnation, because the occurrence has not yet come to pass and, thus, cannot contribute to the mass of information affecting the market value of the property on that day. In short, a posttaking zoning change is irrelevant to the just compensation calculation because it does not make the fact of consequence — that information regarding the reasonable possibility of a zoning change may have impacted the market value of property on the date of the taking — more probable or less *141 probable.[35]
The trial court’s ruling and the Court of Appeals dissenting position on the admission of posttaking evidence are informed by a common logical fallacy. As our dissenting colleague, Justice MARKMAN, argues: “That the property was, in fact, rezoned makes it ‘more probable’ that a ‘reasonable possibility’ of rezoning existed at the time of the taking. Post at 171-172. At its core, this argument supposes that the probability of a particular occurrence at a specific point in time is made stronger by after-the-fact events.[36] This fallacy pre *142 sumes that a zoning event occurring after the date of condemnation has logical and legal relevance to the hypothetical “willing buyer’s” calculation of the price of the property on the condemnation date.
In order to understand the flaw in the probability theory and rationale of the Court of Appeals dissent and the trial court, it is important to remember the context of the just compensation valuation goal. Although condemnation results in a “forced sale,” the price the condemning agency is required to pay must approximate that price which a willing buyer would have offered for the property at the time of the taking. Consequently, because information concerning events occurring after the condemnation could not possibly have influenced the conduct of a willing buyer on the date of the taking, it can never be logically, and thus legally, relevant in determining the price that the theoretical willing buyer and seller would have agreed upon on the date of the taking.
Consider the application of this theory of probability to an event-such as the toss of a die-the probability of which is known. That a six is rolled after one predicts this outcome does not increase the strength of the prediction beyond the usual one-in-six chance of being correct. However, contrary to conventional probability theory, the proffered dissenting probability theory suggests that the predictive force of a “six” call is made stronger by the mere fact that the thrown die actually revealed a six. It is hard to understand how such a “back to the future probability theory” works any more logically when an event less predictable than the roll of a die is at issue.
*143 While a posttaking change in zoning may suggest that one party may have had a more astute prognostication of local zoning practices, it cannot seriously be advanced that a zoning change made after the taking could in any way have influenced a “willing buyer’s” pricing decision on the day of the taking. Only that which could legitimately influence a buyer at the time of the taking is legally and logically relevant to the amount of compensation that must be paid for a taking. Because events that occur after the taking fall outside this zone of potential influence, they cannot logically and therefore legitimately be considered in determining just compensation.
This case well illustrates the illogic of admitting evidence of postcondemnation events to influence the fact-finder’s determination of just compensation under the statute. Here, the change in zoning occurred two and one-half years after the date of the taking. It is difficult to envision how a theoretical “willing buyer” of defendants’ property would have factored into his purchase offer in 1995 a zoning decision made by Novi[37] more than two years after that date.[38]
*144 As noted by the Court of Appeals dissent and by our dissenting colleague, post at 178, 4 Nichols, Eminent Domain (3d ed), § 12C.03[3], indicates that “ ‘[t]he fact that, subsequent to the taking, the zoning ordinance was actually amended to permit the previously proscribed use has been held to be weighty evidence of the existence (at the time of the taking) of the fact that there was a reasonable probability of an imminent change.’ ”[39] Although it is true that some courts have, indeed, permitted the introduction of posttaking rezoning evidence, for the reasons we have expressed, we reject the reasoning employed by these courts.[40] We do not, for example, agree with the New Jersey Supreme Court that evidence of a posttaking zoning change may serve to “support the reasonableness of the factual claim that on the date of taking the parties to a voluntary sale would have recognized and been influ *145 enced by the probability of an amendment in the near future in fixing the selling price.”[41] The issue, again, is whether the perception of the existence of a market factor (such as the possibility of an imminent rezoning) would change the amount that a fictional buyer would be willing to pay on a given date. The fact that something that was only a possibility on day 1 becomes a reality on day 2 is not relevant to fair market value on day l.[42]
Our dissenting colleague, as evidenced by his lengthy discussion describing the “imperfect” nature of the eminent domain procedure in calculating just compensation, appropriately explains why condemnation, being a forced sale, can only approximate a real market real estate transaction. Although we are certainly not unsympathetic to the plight of the innocent landowner who is compelled to sell its property to the public, the governmental power of condemnation is one that is specifically condoned by our Constitution and regulated by the UCPA.
Justice MARKMAN’s proposal — that we allow in evidence of posttaking events in order to counterbalance the “artificial construct” of the hypothetical willing *146 buyer and seller — is not only inimical to the constitutional and statutory duty to determine fair market value as of the date of the taking; it is also illogical. We submit that Justice MARKMAN incorrectly assumes that the inadmissibility of evidence of posttaking occurrences leads to the invariable “detriment of the property owner” and “the benefit of the government.” Post at 182. Although the property owners in this particular case might be benefited by the introduction of such evidence, the converse would be true were the government permitted to introduce evidence of posttaking events having a diminishing effect on property value. It is not difficult to imagine a situation in which a condemning authority might seek to present, in connection with its just-compensation calculation, evidence that the condemned property was rezoned after the taking from commercial to residential, resulting in a lower market value.[43]
C. HARMLESS ERROR
Defendants argue that any error was harmless because MDOT requested that the jury view the property and because, during the view, the jury saw evidence that a commercial office park was being constructed on defendants’ remaining property. The Court of Appeals majority held that this evidence would likely not have been admitted had defendants not been permitted to present evidence of the posttaking rezoning. We disagree; MDOT’s motion for a jury view was granted before the trial court ruled that defendants could put on *147 their valuation experts. Moreover, we simply have no basis in the existing record to determine what it was that the jury actually saw, and the parties give radically divergent opinions on this point.
We nevertheless conclude that the error was not harmless. Although the jury was properly instructed that it was to determine fair market value as of the date of the taking, it was not instructed that it was to consider only the information extant at the time of the taking. Rather, the jury no doubt believed that the fair market value of the property on the date of the taking was to be calculated as if rezoning were a fact, as it was at the time of the trial.
More important, the trial court sorely compounded the error by refusing to allow MDOT to rebut the posttaking evidence by demonstrating that the rezoning was directly attributable to the condemnation itself. In this regard, we agree with our dissenting colleague that the trial court erred in precluding the admission of such evidence. See post at 167. As we have noted, the UCEA provides that just compensation is not to be determined on the basis of changes in market conditions that are substantially due to the general knowledge of the imminent condemnation of the property; rather, as MCL 213.70 provided at the time of the filing of this condemnation action, “[t]he property shall be valued in all cases as though the acquisition had not been contemplated.”[44] Thus, to the extent that, defendants presented any evidence supporting a change in market value, MDOT should have been permitted to establish that such a change in value was a result of the condemnation of the property. Because MDOT was deprived of this clear statutory right, the trial court’s *148 initial error in admitting the posttaking rezoning evidence was inconsistent with substantial justice[45] and, therefore, may not be considered harmless. We thus affirm the judgment of the Court of Appeals and remand this case for a new trial.
rv CONCLUSION
The trial court abused its discretion when it denied MDOT’s motion to exclude evidence that defendants’ property was rezoned commercial after the property was condemned. Such evidence is irrelevant to the critical just compensation inquiry, which is what a willing buyer would pay for the property on the date of the taking. Because the trial court further compounded this error by refusing to allow MDOT to establish, as contemplated by the UCPA, that the zoning change was effectuated by the fact of the condemnation itself, the error in the admission of the evidence was not harmless. We affirm the decision of the Court of Appeals and remand for further proceedings.
Taylor, C.J., and Corrigan, J., concurred with Young, J.

 MCL 213.55(1) requires a condemning agency, before initiating negotiations for the purchase of property, to make a “good faith written offer” based on the agency’s appraisal of just compensation for the property.

 At the time, the property was zoned by the city of Novi for single-family homes and agricultural uses (R-A Residential/Acreage). In May 1998, approximately two and one-half years after the taking occurred, Novi rezoned the property for office/service/technology uses (OST).

 “ ‘Highest and best use’ is a concept fundamental to the determination of true cash value. It recognizes that the use to which a prospective buyer would put the property will influence the price that the buyer would be willing to pay.” Edward Rose Bldg Co v Independence Twp, 436 *128 Mich 620, 633; 462 NW2d 325 (1990). Thus, a condemnee is generally entitled to compensation based on the “highest and best use” of his property. St Clair Shores v Conley, 350 Mich 458, 462; 86 NW2d 271 (1957).

 MCL 213.51 et seq.

 For example, MDOT presented the testimony of Novi’s chief planning consultant that, in 1993, the planning commission recommended that the parcel not be rezoned commercial. The consultant further testified that, as of the date of the taking, there was no plan to rezone the property because of the demand for large-lot, million-dollar homes.

 For example, defendants presented evidence that city officials had made representations concerning their interest in rezoning the area to accommodate business interests and that, at the time of the taking, Novi’s economic development coordinator was already involved in the planning for an OST zoning classification to accommodate defendants’ planned use of their property. At the time of the taking, however, defendants had not petitioned the city to have the land rezoned.

 Evidence of value related solely to the taking itself, including evidence of a rezoning that occurs because of the taking, is not admissible for just compensation purposes. See MCL 213.70(1); Silver Creek Drain Dist v Extrusions Div, Inc, 468 Mich 367, 378 n 13; 663 NW2d 436 (2003), citing In re Urban Renewal, Elmwood Park Project, 376 Mich 311, 318; 136 NW2d 896 (1965) (“The effect on market value of the condemnation proceeding itself may not be considered as an element of value.”).

 Defendants contended that the posttaking rezoning evidence was merely cumulative of the jurors’ bus tour of the property, because, in light of the extensive commercial development present on the property at the time of the tour, it was evident that the property had already been rezoned to allow for commercial uses.

 In light of its conclusion, the majority did not address MDOT’s contention that the trial court further abused its discretion in prohibiting it from introducing evidence that the rezoning was caused by the condemnation.

 The dissent’s rationale here is difficult to follow, and we agree with Justice Makkman’s conclusion that MCL 213.73 does not apply. See post at 186. As the dissenting judge himself notes, MDOT made no “enhancement" claim under MCL 213.73. Rather, it simply sought to rehut defendants’ posttaking rezoning evidence with its own evidence that the rezoning was caused by the condemnation and, thus, could not properly be considered in determining just compensation. See MCL 213.70(1), (2).

 470 Mich 874 (2004).

 VanElslander, supra at 129.

 460 Mich 484, 488; 596 NW2d 607 (1999).

 People v Katt, 468 Mich 272, 278; 662 NW2d 12 (2003).

 Silver Creek, supra at 379.

 Id. at 378, quoting United States v Twin City Power Co, 350 US 222, 235; 76 S Ct 259; 100 L Ed 240 (1956) (Burton, J., dissenting).

 Silver Creek, supra at 377, quoting Searl v Lake Co School Dist No 2, 133 US 553, 564; 10 S Ct 374; 33 L Ed 740 (1890).

 Silver Creek, supra at 379, n 14, quoting VanElslander, supra at 130.

 See former MCL 213.70 (1980 PA 87), now MCL 213.70(3), amended by 1996 PA 474, effective December 26, 1996 (emphasis supplied). The 1996 amendment of MCL 213.70, which took effect after the condemnation complaint was filed in this case, does not contain any substantive changes that would affect our analysis in this case.

 See former MCL 213.70 (1980 PA 87), now MCL 213.70(1), (3), amended by 1996 PA 474, effective December 26, 1996.

 See MCL 213.73, which provides, in part:
(1) Enhancement in value of the remainder of a parcel, by laying out, altering, widening, or other types of improvements; by changing the scope or location of the improvement; or by either action in combination with discontinuing an improvement, shall be considered in determining compensation for the taking.
(2) When enhancement in value is to be considered in determining compensation, the agency shall set forth in the complaint the fact that enhancement benefits are claimed and describe the construction proposed to be made which will create the enhancement. ...
(4) The agency has the burden of proof with respect to the existence of enhancement benefits.
*136 As explained in note 10 of this opinion, this portion of the UCEA is inapplicable to this dispute. MDOT raised no argument that the award of just compensation had to reflect any enhancement to the remainder of defendants’ property by virtue of the condemnation.
It must be noted that the principles set forth in MCL 213.70 and 213.73, as well as the principles we today set forth, are wholly reciprocal. Just as MCL 213.73 allows the condemning agency to offset the fair market value of partially taken properly by the increased value to the remainder, MCL 213.70(3) allows the properly owner to seek increased just compensation on the basis of the devaluation of his remaining property due to the taking. Similarly, just as our holding today precludes a property owner from seeking increased just compensation on the basis of an ex ante event, it also precludes the condemning agency from paying a reduced amount on the basis of such an event. See note 34 of this opinion.

 See former MCL 213.70 (1980 PA 87), now MCL 213.70(1), amended by 1996 PA 474, effective December 26, 1996.

 Silver Creek, supra at 378, quoting In re Widening of Gratiot Ave, 294 Mich 569, 574; 293 NW 755 (1940), quoting In re Widening of Michigan Ave, 280 Mich 539, 548; 237 NW 798 (1937); see also State Hwy Comm’r v Eilender, 362 Mich 697, 699; 108 NW2d 755 (1961).

 362 Mich 697, 699; 108 NW2d 755 (1961), quoting United States v Meadow Brook Club, 259 F2d 41, 45 (CA 2, 1958).

 Eilender, supra at 700.

 VanElslander, supra at 130, quoting the Court of Appeals dissent.

 Id. at 131, quoting Eilender, supra at 699 (emphasis supplied).

 See Katt, supra at 278.

 Our responses to the “dissent” refer to Justice Markman’s opinion. Although Justice Weaver has also issued a dissent, this dissent does nothing more than reiterate, in abridged fashion, the opinion of Justice Markman.

 MRE 401.

 See VanElslander, supra at 130; Eilender, supra at 699; In re Widening of Gratiot Ave, supra.

 Justice Markman purports to agree that “ ‘the “fact that is of consequence” is the reasonable possibility of a zoning modification, as that possibility might have been perceived by a market participant on condemnation day.’ ’’ Post at 171, n 8. Yet his analysis completely ignores the italicized phrase, which is critical to the just-compensation inquiry. A market participant in December 1995 would have had absolutely no way of knowing that the subject property would have been rezoned two and one-half years later. Moreover, as we have pointed out, the objective probability that something will occur in the future is in no way dependent on what actually occurs after that probability is calculated.

 Of course, as of the date of the taking, December 7,1995, defendants had not even made a formal request for a zoning change.

 Consider the stock market. The price of a given share is often affected by available information. The value of a share may decrease, for example, as rumors spread that a company’s chief operating officer might be indicted for a crime related to the operation of the business. Similarly, during the preindictment period, that share’s value may rise or fall depending on investors’ perceptions regarding the probability that an indictment is or is not imminent. The fact that the officer is, in fact, indicted, however, does not and cannot have any bearing on the market price of the share on the day before the day the officer is indicted. The fact of the actual indictment is, then, quite irrelevant in determining why the share was trading at a given price on the day before the indictment was filed. Rather, it was merely the speculation concerning the indictment that made the stock price fluctuate.

 The error of defendants’ position is evident when one considers that it makes fair market value wholly dependent on extraneous temporal considerations: when the condemnation trial occurs and when, if ever, a zoning change occurs. For example, suppose that identical adjoining properties, separately owned, are zoned residential on the day that each is condemned. Suppose that one trial occurs two months before the properties are rezoned commercial, while the other trial does not occur until after the rezoning. The first property owner to go to trial will, of course, not he able to present to the jury evidence that the property was actually rezoned. The second property owner, however, will be in a position to argue that the fact that the rezoning actually occurred increased the probability, on the day of the taking, that the rezoning was going to occur, and, in turn, that a higher fair market value must be assigned to that property. This illustrates the incongruity of defendants’ position: The two properties, on the day of the taking, had precisely the same probability of being later rezoned; yet the second owner, solely by virtue of the later trial date, will be permitted to present evidence to show that not only was there a “reasonable possibility” of rezoning, but future rezoning was an absolute certainty. Aside from the obvious logical error of defendants’ position, adopting such a rule would also lead to gamesmanship and strategic filing. Indeed, this rule would give condemning agencies every incentive to postpone zoning plans in order to reduce the price of just compensation.

 In the world of psychology, this phenomenon is known as “hindsight bias,” whereby the subject, upon learning that something occurred, overestimates the ability to predict that that “something” would occur. See <http://en.wikipedia.org/wiki/Hindsight_bias> (notingthat “[pjeople are, in effect, biased by the knowledge of what has actually happened when evaluating its likelihood”).
*142 Compare this flawed ex ante probability logic with the common logical fallacy known, in the realm of causation theory, as “post hoc ergo propter hoc” (“after this, therefore because of this”). In each case, the subject assigns inflated significance to an after-the-fact event.

 As an aside, it must be remembered that it was the city of Novi, and not the condemning authority (MDOT), that rezoned this property. We are not, in this case, concerned with any allegations of fraud or gamesmanship on the part of the condemning agency (for example, by delaying an inevitable rezoning decision in order to avoid paying a higher amount as just compensation for a taking).

 We stress again that it is not the probability of a zoning change that is irrelevant to the just-compensation determination. Indeed, we adhere to the rule, set forth in Eilender and VanElsander, that evidence of the reasonable possibility of a zoning change is admissible to the extent that it aids in determining the fair market value of the property at the time of the taking. Rather, it is merely the fact of the posttaking zoning change that is irrelevant, as it is of no import in determining “ ‘the price which a willing buyer would have offered for the property just prior to the taking....’” VanElslander, supra at 131, quoting Eilender, supra at 699.

 Similarly, it is noted in 9 ALR3d 291, § 11 that some courts have permitted the introduction of this type of evidence, while other courts have rejected the admission of such evidence.

 While there is a dearth of case law on point, Justice Maekman has cited a small handful of foreign cases supporting his position. It is far from evident that the few cases cited in the Nichols text and in footnote 10 of Justice Markman’s dissent, post at 173 n 10, represent a majority rule. In any event, we are hardly compelled to subscribe to the view of a few misguided courts. These cases give lip service to the notion that it is fair market value at the time of the taking that must guide the determination of just compensation; yet, without providing a satisfactory explanation for doing so, they sanction the admission of evidence that is wholly irrelevant to market status at that critical time. We choose, rather than blindly to follow the lead of these few jurisdictions, to adhere to the principles set forth in the UCPA and developed under our Constitution. Moreover, as the Nichols text itself recognizes, “[a]n important caveat to remember in applying [the rule that the probability of rezoning may be considered in determining just compensation] is that the property must not be evaluated as though the rezoning were already an accomplished fact. It must be evaluated under the restrictions of the existing zoning with consideration given to the impact upon market value of the likelihood of a change in zoning.” Nichols, supra at § 12C.03[2].

 New Jersey v Gorga, 26 NJ 113, 118; 138 A2d 833 (1958).

 We note further that, perhaps fearful of misuse of such evidence, the New Jersey court in Gorga stressed that the posttaking zoning amendment at issue had to be “carefully confined to its proper role” and could be received only for the purpose of establishing the reasonableness of the factual claim that market participants would have been influenced by the possibility of a future zoning change. Id. at 118. We think that admission of posttaking zoning changes cannot be so easily “confined.” After all, the jurors will have been told that an event that was merely a possibility pretaking is now a foregone conclusion.
Moreover, Justice Markman does not explain how to limit his approach to only posttaking rezoning situations (and not to the myriad other posttaking events that might be argued to be somehow relevant to fair market value, such as catastrophic property damage).

 Again, Justice Makkman appears to be of the belief that the condemning agency in this case is somehow profiting, at defendants’ expense, from the rezoning decision. Yet this case illustrates how misplaced is Justice Mabkman’s supposition. In this very case it was not plaintiff MDOT, but a third party — the city of Novi — that made the rezoning decision.

 See former MCL 213.70 (1980 PA 87), now MCL 213.70(1), amended by 1996 PA 474, effective December 26, 1996.

 MCR 2.613(A); see also Ward v Consolidated Rail Corp, 472 Mich 77, 84; 693 NW2d 366 (2005).