# STATE OF MICHIGAN

# COURT OF APPEALS

---

Estate of JOHN ANTHONY SDAO, Deceased, by
JOHN SAM SDAO, Personal Representative,

        Plaintiff-Appellant/Cross-Appellee,

v

MAKKI & ABDALLAH INVESTMENTS, d/b/a
MOBIL GAS STATION, and JOHN DOE
CORPORATION and JANE DOE
CORPORATION,

        Defendants,

and

SARA CORPORATION, d/b/a TWELVE MILE &
CAMPBELL MART,

        Defendant-Appellee/Cross-
        Appellant,

and

JOHN DOE CORPORATION and JANE DOE
CORPORATION,

        Defendants,

and

YASSMINE WHOLESALERS,

        Defendant-Appellee.

UNPUBLISHED
January 21, 2016

No. 322646
Oakland Circuit Court
LC No. 2013-132325-NO

---

Before: SHAPIRO, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

-1-

Plaintiff, Estate of John Anthony Sdao by its personal representative John Sam Sdao (Sdao), appeals as of right a July 3, 2014 judgment in favor of the defendants. Defendant, Sara Corporation, cross-appeals as of right the same order. Sdao filed suit after John Anthony Sdao (decedent) committed suicide with the presence of K2 "Spice"[1] in his system. The trial court granted summary disposition on Sdao's negligence counts, and the jury returned a verdict of no cause of action on Sdao's claims under the Consumer Protection Act, MCL 445.903. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Decedent was pronounced dead at 7:07 a.m. on April 11, 2012. Royal Oak Police Department Officer Perry Edgil testified that he found decedent hanging in a bedroom closet. Decedent's autopsy and toxicology report revealed that he had cannabinoids—specifically .15 nanograms per milliliter of AM-2201—in his blood. Sdao filed his complaint in this action in March 2013, alleging claims of negligence, gross negligence, breach of warranties, and violation of the Consumer Protection Act against Sara Corporation.

The trial court granted summary disposition under MCR 2.116(C)(8) and (10) on Sdao's negligence, gross negligence, and warranties claims, and the case proceeded to trial on Sdao's Consumer Protection Act claim. At trial, a variety of witnesses testified that decedent was happy, loving, good-natured, and not depressed before he began smoking K2. Decedent's friends, Zack Smith and Neil Collins, and decedent's girlfriend, Stefsha Maseth, each testified that after he began smoking K2, decedent became withdrawn and depressed. However, Maseth testified that decedent had previously mentioned suicide and stated that if he committed suicide, it would be by hanging. Sara Corporation's owner, Sam Abdullah, and manager, Wassam Amari, each testified that K2 was legal when Sara Corporation sold it, and that they were not aware that people were smoking K2 or that K2 was dangerous.

Dr. Gerald Allen Shiener testified as an expert in forensic psychiatry. According to Dr. Shiener, very small amounts of psychoactive drugs can drastically affect behavior. In Dr. Shiener's opinion, smoking K2 caused decedent to kill himself. Dr. Shiener formed his opinion after reviewing peer-reviewed studies, literature, his personal experiences, and the facts of decedent's case. In contrast, Dr. Warren Spitz testified as an expert in forensic pathology and toxicology. Dr. Spitz opined that AM-2201 did not contribute to decedent's death.

The jury determined that Sara Corporation violated the Consumer Protection Act, but concluded that the violation did not cause Sdao's loss. The trial court entered judgment in favor of Sara Corporation. Sdao now appeals.

## II. PROXIMATE CAUSE

---

[1] K2 or "spice" is known as "synthetic marijuana." The testimony in this case included that the chemical AM-2201, present in 70% of K2 products, "causes some of the symptoms of the high, but in a different way because it's not accompanied by some of the sedatives and some of the other compounds that occur in natural marijuana." AM-2201 is associated with behavioral disruptions, discomfort, and anxiety.

## A. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." The trial court must consider all the documentary evidence in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Maiden*, 461 Mich at 120. A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## B. ANALYSIS

Sdao contends that the trial court improperly granted summary disposition on his negligence, gross negligence, and warranty claims. We disagree.

To prove negligence, a plaintiff must show that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the plaintiff was injured, and (4) the defendant's breach caused the plaintiff's injury. *Henry v Dow Chemical Co*, 473 Mich 63, 71-72; 701 NW2d 684 (2005). To prove causation, the plaintiff must prove both cause in fact and proximate cause. *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). Similarly, in products liability cases involving express and implied warranty claims, the plaintiff must show that a seller's failure to exercise reasonable care proximately caused the plaintiff's injuries. MCL 600.2947.

Whether proximate cause exists is a question of law. *Moning v Alfono*, 400 Mich 425, 440; 254 NW2d 759 (1977). Proximate cause only exists where the defendant's conduct was significant and important toward causing the plaintiff's injury. *Id*. at 439. Intentional third-party acts can be superseding events that bar a defendant's liability. *Johnston v Harris*, 387 Mich 569, 574-575; 198 NW2d 409 (1972). "A superseding cause is one that intervenes to prevent a defendant from being liable for harm to a plaintiff that the defendant's antecedent negligence is a substantial factor in bringing about." *Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 436; 487 NW2d 106 (1992) (opinion by BRICKLEY, J.); *Id*. at 447-448 (opinion by RILEY, J.). Suicide may be a superseding proximate cause of an injury. See *Cooper v Washtenaw Co*, 270 Mich App 506, 509-510; 715 NW2d 908 (2006); Restatement of Torts, 2d, § 440.

Whether a plaintiff's suicide relieves a defendant of liability depends on whether the act of suicide was a reasonably foreseeable consequence of the defendant's action. *Hickey*, 439 Mich at 440, 448. When the defendant's negligence enhances the likelihood that an intervening cause will occur, the intervening cause may be reasonably foreseeable. *Id*. at 438, 447. See *Johnston*, 387 Mich at 573. The question is whether the intervening cause was one that the defendant anticipated or reasonably should have anticipated under the circumstances. *Hickey*, 439 Mich at 438, 447; *Moning*, 400 Mich at 441.

In this case, Amari testified at his deposition that he understood that people smoked K2. According to Amari, the supplier said it was a scent, that "[y]ou burn it in a cup or something for scents." Amari also testified that he didn't know that people were smoking K2. Amari was not

aware of negative health consequences from smoking K2. Dr. Shiener opined in his report that people generally think that things that are sold in stores are safe and legal and are not associated with the health risks of other drugs. The trial court determined that there was no question of fact regarding whether it was foreseeable consuming K2 would cause a person to commit suicide. The trial court reasoned that even Sdao's experts remarked on the lack of evidence regarding K2 and the fact that "legal" usually means "safe."

We conclude that, viewing the record in the light most favorable to Sdao, there was no evidence that Sara Corporation should have reasonably anticipated that selling K2 would increase decedent's risk of suicide. Even presuming that Sara Corporation knew that people were smoking K2, it was not generally known that AM-2201 or K2 products increased suicide risk, and there was no evidence that Sara Corporation actually knew that K2 could increase a user's risk of suicide. The trial court did not err by granting summary disposition because Sdao failed to establish that Sara Corporation reasonably should have anticipated that selling K2 could result in someone committing suicide.

## III. EVIDENTIARY ISSUES

### A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). We review de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it. *Dep't of Transp v Frankenlust Lutheran Congregation*, 269 Mich App 570, 575; 711 NW2d 453 (2006).

### B. EXPERT QUALIFICATIONS AND TESTIMONY

Sdao contends that the trial court erred regarding Dr. Spitz's testimony in three respects: (1) it allowed the jury to hear the voir dire; (2) it improperly admitted testimony outside of Dr. Spitz's expertise; and (3) it permitted impermissible testimony during opening statement. We disagree.

MRE 702 provides the limitations on testimony by expert witnesses:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 obligates the trial court to "ensure that any expert testimony admitted at trial is reliable." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004).

First, we conclude that the trial court did not plainly err by allowing the attorneys to voir dire the expert witnesses in front of the jury. Hearings on preliminary matters of admissibility should be conducted outside the presence of the jury "when the interests of justice so require . . . ." MRE 104(c). However, this rule does not apply to evidence "relevant to weight or credibility." MRE 105(e). An expert's qualifications may pertain to the weight of the expert's opinion. *Gilbert*, 470 Mich at 788-789; *Grow v WA Thomas Co*, 236 Mich App 696, 714; 601 NW2d 426 (1999).

In this case, the trial court conducted a hearing on a preliminary matter—whether Dr. Spitz could qualify as an expert—in front of the jury. While hearings on preliminary matters should be conducted outside of the jury, Dr. Spitz's qualifications were relevant to the weight of his testimony. Accordingly, MRE 104(c) did not apply to Dr. Spitz's voir dire, and the trial court did not err by allowing the jury to hear the evidence regarding Dr. Spitz's qualifications.

Second, we conclude that the trial court did not err when it allowed Sara Corporation to make opening statements about Dr. Spitz's expected testimony. The record does not support Sdao's assertion that Sara Corporation made an improper statement.

"[T]he purpose of an opening statement is to tell the jury what the advocate will attempt to prove." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 503; 668 NW2d 402 (2003). In this case, Sara Corporation's full opening statement regarding Dr. Spitz was as follows:

> And then you're going to hear—you're going to hear in this case, and you got some prediction of it from counsel, from Dr. Warner [sic] Spitz. . . .
>
> And he will tell you that in effect it is a forensic pathologist within their expertise to determine if there were any other factors that came into play when there is a death. He will tell you that the fact that the official autopsy report did not have any other factors involved in the case, is the conclusion of the official report that there were no factors in the case. He will also tell you that point one five nanograms per deciliter is such a microscopic and minute amount, it is so small that it is impossible for that to be effecting [sic] this young man's behavior or—in any way.

Sara Corporation did not argue any psychological evidence related to Dr. Spitz's proposed testimony. Accordingly, the record fails to support Sdao's argument on this point. Further, Sdao has failed to show any prejudice because the trial court instructed the jury that the attorneys' statements were not evidence. See *id*. at 503-504.

Third, we conclude that the trial court did not err by admitting improperly psychiatric testimony from Dr. Spitz because Dr. Spitz did not testify about psychiatric or psychological matters. When Sara Corporation asked Dr. Spitz to opine whether AM-2201 could have any psychological effect, the trial court sustained Sdao's objection. Sdao does not identify in his brief any other area on which Dr. Spitz actually testified on a psychological matter. Rather, Dr. Spitz based his opinion on toxicological data, the role of a pathologist to determine cause of death, and the fact that the autopsy report did not indicate that intoxication contributed to suicide. We conclude that the trial court did not allow Dr. Spitz to testify outside his area of expertise.

## C. PRIOR ACTS EVIDENCE

Sdao contends that the trial court abused its discretion by admitting evidence of decedent's marijuana citation and his possible breakup with Maseth. Sdao contends that this evidence was irrelevant and improper character evidence. We disagree.

The trial court may only admit relevant evidence. MRE 402. Relevant evidence is evidence that has any tendency to make a fact of consequence more or less probable. MRE 401; *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 731; 761 NW2d 454 (2008). Evidence is relevant and material if it is offered to prove or disprove a matter at issue in the case. *Id*. at 730.

However, MRE 403 provides that, even if evidence is relevant, the trial court may not admit it if the danger of its prejudicial effect substantially outweighs its probative value. MRE 403. The prejudicial effect of the evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight. *Shaw v City of Ecorse*, 283 Mich App 1, 27; 770 NW2d 31 (2009). Evidence is probative if it has *any* tendency to make a fact of consequence more or less probable. *Mich Dep't of Transp v Haggerty Corridor Partners Ltd Partnership*, 473 Mich 124, 139; 700 NW2d 380 (2005) (opinion by YOUNG, J.).

Generally, MRE 404(b)(1) prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts to prove that person's character or propensity to engage in that type of action. Such evidence

> may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . .[MRE 404(b)(1).]

The trial court properly admits other acts evidence if the proponent establishes that (1) it is offering the evidence for a proper purpose, (2) the evidence is relevant to a fact of consequence at trial, and (3) the evidence is not substantially more prejudicial than probative. *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000).

In this case, Sdao elicited on direct examination of Collins that Collins and decedent smoked natural marijuana together and that decedent acted differently under the influence of natural marijuana. Maseth testified that decedent was arrested for possessing marijuana at some point in January 2012. Maseth also testified that decedent was pulled over and ticketed for marijuana possession a few days before his suicide and, as a result, his truck was impounded.

Maseth also testified that she and decedent argued shortly before his death. Maseth also testified that she and decedent consistently argued, broke up, and made up. John Sdao testified that decedent and Maseth were constantly breaking up and getting back together. Officer Edgil testified that Maseth told him that she and decedent had recently broken up but that Maseth was too upset to continue the interview. Maseth testified that after both events, decedent dealt with the problems and did not commit suicide.

We conclude that the trial court's decision to admit this evidence was not an abuse of discretion. The cause of decedent's suicide was the main issue in controversy between the parties. Sara Corporation was only liable for decedent's injury if his suicide was a result of the AM-2201 that it sold him. Accordingly, other reasons why decedent might commit suicide—including relationship problems and problems with the law—were more than marginally probative. The evidence of decedent's natural marijuana possession was relevant to show that decedent was facing legal trouble at the time of his death and, therefore, his death was the product of his own intentional actions.

Further, the record does not support Sdao's assertion that evidence of decedent's citation for possessing natural marijuana confused the jury. Both attorneys throughout the case were careful to make clear when they were discussing natural marijuana and when they were discussing synthetic marijuana. The trial court also provided a limiting instruction on this issue.

Finally, Sdao's argues that the trial court should not have admitted evidence that decedent and Maseth broke up because there was no evidence that they did break up. This argument is inherently illogical. Rather, Officer Edgil testified that Maseth, while in a highly emotional state, had informed him that she and decedent had broken up. Maseth testified that they had not broken up. This conflict in this evidence created a question of fact for the jury to resolve, see *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998), but counsel for Sara Corporation did not introduce evidence that did not exist.

## D. REBUTTAL EVIDENCE

Sdao contends that the trial court erred by excluding photographic and video evidence to rebut Sara Corporation's arguments about decedent's character and state of mind. We disagree.

"Rebuttal evidence is admissible to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996) (quotation marks and citations omitted). Evidence is proper as rebuttal evidence if it is responsive to evidence introduced or theories developed in the other party's case in chief. *Id*. A party may not divide evidence and "sav[e] some for rebuttal." *People v Losey*, 413 Mich 346, 351; 320 NW2d 49 (1982). Accordingly, "if the evidence should have been introduced in the case in chief, rebuttal is improper." *People v Mateo*, 453 Mich 203, 245 n 20; 551 NW2d 891 (1996).

In this case, Sdao attempted to introduce photographic evidence of decedent during his case in chief to show that decedent was generally a happy person. Sara Corporation contended that the trial court should exclude Sdao from using evidence not on the exhibit list, including the photographic evidence. Sdao contended that the pictures and videos were demonstrative evidence and "will come into evidence from the parents[.]" The trial court ruled that Sdao could not present the photographs because they were not on Sdao's exhibit list.

Sdao later attempted to introduce the photographs "to rebut the presumptions brought by the defendant that [decedent] was some sort of drug addict or terrible person or had bad character." Sara Corporation argued that the trial court had previously excluded the exhibits.

The trial court determined that Sdao could have offered the evidence during his case in chief and, therefore, they were not appropriate rebuttal evidence.

We conclude that the trial court's decision did not fall outside the range of principled outcomes. Sdao could have introduced photographic and video evidence of decedent during his case in chief. However, he was barred from doing so because he had failed to include this evidence on his exhibit list. Because the evidence could have been offered during Sdao's case in chief, it was not proper rebuttal evidence.

## IV. SARA CORPORATION'S CROSS-APPEAL

Sara Corporation raises several evidentiary issues and issues with the jury instructions on cross-appeal. We decline to address these issues.

Michigan courts exist to decide actual cases and controversies, and thus we will not decide moot issues. *Federated Publications, Inc v Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002). A matter is moot if this Court's ruling "cannot for any reason have a practical legal effect on the existing controversy." *Gen Motors Corp v Dep't of Treas*, 290 Mich App 355, 386; 803 NW2d 698 (2010); *Federated Publications*, 467 Mich at 112. The issues on cross-appeal are moot because there are no surviving claims against Sara Corporation. Sara Corporation cannot receive any greater relief than the relief they already have.

We affirm.

/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher